IN THE UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF FLORIDA

Civil Action No.: 1:21-cv-24317

ATLANTIC CORPORATION OF
WILMINGTON, INC.,

      Plaintiff,

vs.

TBG TECH CO. LLC, a Florida
limited liability company,
JOHANNES FLOE,
and MATTHEW STARLEY.

      Defendants.

_____/

## COMPLAINT

Atlantic Corporation of Wilmington, Inc. ("Plaintiff" or "Atlantic"), files this complaint against Defendants TBG Tech Co. LLC, a Florida limited liability company ("TBG"), Johannes Floe ("Floe"), and Matthew Starley ("Starley") (collectively "Defendants"), and alleges as follows:

## INTRODUCTION

1. Defendant TBG is a Florida Limited Liability Company involved in the sale and distribution of personal protective equipment, such as masks and gloves. Defendants Floe and Starley are TBG's principals.

2. On July 15, 2020, Plaintiff, through an intermediary, placed two orders for the purchase of nitrile gloves (the "Gloves") with TBG, for a total purchase price of $971,572.50.

1

3. After a month of delay and false assurances that the Gloves had been shipped from Asia, the shipment never materialized.

4. Finally, on August 25, 2020, Plaintiff requested a refund of the purchase price.

5. On September 9, 2020, Defendants advised that the refund had been processed from TBG's account.

6. To this date, Plaintiff has not received the requested refund of the purchase price.

## PARTIES

7. Plaintiff is a North Carolina corporation with its principal office and place of business in New Hanover County, North Carolina.

8. Defendant TBG is a Florida limited liability company with its principal office and place of business at 1111 Lincoln Road, Miami Beach, Florida. TBG holds itself out as being involved in the distribution and sale of personal protective equipment, such as masks and gloves. TBG's services are described at https://tbg.healthcare.

9. Defendant Floe is a resident of Florida. Floe was at all pertinent times a principal owner, director and sole member of TBG. Upon information and belief, all communications and representations alleged in this complaint were made from Florida.

10. Defendant Starley is a resident of Utah and, at all pertinent times, held himself as an owner, general counsel, and agent of TBG. Upon information and belief, all communications and representations to TBG and Floe made by Starley were directed to Florida.

## JURISDICTION

11. This Court has subject matter jurisdiction of the case pursuant to 28 U.S.C. § 1332 in that Plaintiff and Defendants are citizens of different States and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

12. The Court has general jurisdiction over defendant TBG under Fla. Stat. § 48.193(2) because it is engaged in substantial and not isolated activity within this state by and through its offices and operations in Florida.

13. The Court has general jurisdiction over defendant Floe under Fla. Stat. § 48.193(2) because he is engaged in substantial and not isolated activity within this state by and through his residence in Florida.

14. This Court has specific personal jurisdiction over defendant TBG under § 48.193(1)(a)(1), because it operates, conducts and carries on business in Florida; has offices in Florida; and this case arises from its business activity in Florida.

15. This Court has specific personal jurisdiction over defendants Floe and Starley under § 48.193(1)(a)(1), because they operate, conduct and carry-on business in Florida and this case arises from such business activities in Florida.

16. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1).

## FACTUAL ALLEGATIONS

17. Plaintiff is a North Carolina company involved, among other things, in the sale of personal protective equipment, such as masks and gloves.

18. Defendants knew that the demand for these products had skyrocketed during the Covid-19 pandemic.

19. Atlantic sought to purchase a large amount of nitrile gloves and resell them to cover the then existing overwhelming demand.

20. Between June 26, 2020 and July 15, 2020, Starley, as principal and agent of TBG, informed Plaintiff that TBG had the capacity to source the Gloves from manufacturers in Asia.

Specifically, Plaintiff was informed that TBG had the capacity to supply the Gloves through Vglove, a Vietnamese manufacturer.

21.     Defendants knew that time was of the essence and that Atlantic's need for the Gloves was immediate to cover the tremendous demand related to the early stages of the pandemic in the U.S. See attached **Exhibit A**.

22.     On July 15, 2020, Plaintiff, through an intermediary, placed two orders for the purchase of the Gloves in the total sum of $971,572.50 (the "Glove Orders"). LifeTech Distribution, LLC, ("LifeTech") was named as the vendor for the Gloves. It was understood, however, that TBG was to be the ultimate supplier of the Gloves through its contacts in Asia. It was also understood that Atlantic was the ultimate purchaser of the Gloves.

23.     Consistent with this understanding, on July 20, 2021, TBG issued two invoices for the Glove Orders which identified Floe as the responsible salesperson, TBG as the vendor, and Atlantic's Charlotte, North Carolina facility as the ultimate shipping destination. Attached as **Exhibit B** are copies of these invoices.

24.     In conjunction with the Glove Orders, Starley Law PLLC ("Starley Law") entered into an Escrow Agreement dated July 17, 2020 (the "Escrow Agreement") with Atlantic as the intended third-party beneficiary with specific authority to enforce the Escrow Agreement. Under the terms of the Escrow Agreement, funds advanced by Atlantic for the Glove Orders were deposited in escrow with Starley Law as escrow agent for eventual release to TBG in payment for the Glove Orders. Attached as **Exhibit C** is a copy of the Escrow Agreement.

25.     On or about July 20, 2020, the $971,572.50 purchase price for the Gloves was sent to the Starley Law escrow account ("Escrow Account") pursuant to the Escrow Agreement. On the same day, TBG was asked to provide an SGS report for the Gloves, i.e., a report that the

Gloves were what they were supposed to be. On July 20, 2020, Floe responded that TBG could provide the report once it received the purchase funds, and that the Gloves would be ready for pickup from its Asian supplier within a day of payment.

26. Since the SGS inspection and report would be only provided after receipt of the funds, Plaintiff was concerned what could happen if there were a bad SGS report. On or about July 21, 2020, in response to Plaintiff's inquiry about this, Floe represented to Starley that TBG had four other manufacturers who could supply the Gloves if the first option fell through and, if necessary, could fill the entire order from one of those four manufacturers within twelve hours. Floe also stated that TBG had already advanced funds for the purchase of the Gloves to the manufacturer in Asia to keep the process moving. Upon information and belief, Floe's representations were made from Florida. On that same day, Starley, as TBG's principal and agent, communicated Floe's representations to the Plaintiff.

27. On or about July 21, 2020, Starley replied to Plaintiff conveying the information supplied by Floe. Specifically, Starley emailed that "TBG has four other manufacturers and has represented that they will obtain satisfactory supply from another one within 12 hours if necessary." Starley added, "TBG Tech went ahead and advanced the money to Asia in order to keep the process moving. I have not released the funds to them yet, but would like to as soon as I have the green light."

28. Relying on these assurances, Plaintiff authorized the release of the escrowed funds and such funds were released to TBG's bank account at TD Bank on July 22, 2021.

29. On July 22, 2020, Plaintiff was advised that TBG had wired the funds to the manufacturer.

30. On July 23, 2020, Starley, in his capacity as TBG's principal, informed Plaintiff that the Gloves would arrive "at some point today."

31. On July 26, with still no word from the manufacturer and no confirmation that the Gloves were ready for pickup, Starley reassured Plaintiff that they were communicating directly with the manufacturer's management to "get this deal across the finish line in the next 36 hours." Starley made the representations on behalf of TBG, acting as its principal.

32. On July 30, 2020, Chris Grant, an individual who identified himself as TBG's Director-Europe and who supposedly had high-level connections with the manufacturer, emailed Plaintiff that the Glove Orders had been delayed due to miscommunications but that the manufacturer had received the funds and that he hoped to resolve the matter that day. Attached as **Exhibit D** is a copy of the Email Communication.

33. On July 31, 2020, Plaintiff emailed Grant to inform him that the manufacturer had not contacted Atlantic's logistic team and that the transaction had become a concern to Atlantic. On August 3, 2020, Grant responded that TBG was speaking with the manufacturer on an hourly basis and that the order was on track. On August 5, 2020, Grant emailed that Atlantic's logistic provider would receive information about the order that night.

34. On August 8, 2020, Plaintiff informed TBG that the Gloves needed to be loaded and shipped or the money refunded by August 11, 2020. TBG, through its principal Starley, replied that it would make a "special effort" to make the shipment happen.

35. Despite the multiple assurances, the glove shipment never materialized. On August 11, 2020, TBG, through its principal Starley, informed Plaintiff that it was prepared to secure the Glove Orders from an alternate source, Sri Tang, a manufacturer in Thailand, and air freight them to Atlantic's facility in Charlotte, N.C. TBG explained that the Gloves would land

6

in Los Angeles and then be transported to Charlotte and that the air shipment was scheduled to happen immediately and would be coming with the shipment of a much larger customer.

36. The next day, August 12, 2020, TBG informed Plaintiff that the plane carrying the Gloves was loaded and would arrive in Los Angeles the next day. On August 13, 2020, TBG informed that the Gloves had "cleared Thai customs" and would land in Los Angeles the next day. On August 14, 2020, TBG informed the Plaintiff it was awaiting on the airway bills for the Glove shipment. On August 15, 2020, TBG sent Plaintiff an apology and said they "would have the paperwork when Thailand opens tomorrow." On August 17, 2020, TBG sent another apology, but informed they were confident in the supply, that Floe was told the Gloves had cleared Thai customs the previous Thursday, and that Atlantic's order was part of a TBG's first shipment with this factory for a much larger order. All of these representations were made by Starley, as TBG's principal, and based on information supplied by Floe.

37. On August 18, 2020, Plaintiff's representatives participated in a conference call with Floe. Floe tried to explain the problems that had led to non-delivery of the Glove Orders and said, in anticipation of these issues, he had formed a new relationship with Sri Tang, that he had a $500 million line of credit with Sri Tang, and a formal agreement giving TBG priority to purchase any product in Sri Tang's stock. Floe promised that he would have his lawyers remind Sri Tang of their contractual obligations to TBG and threaten that Sri Tang was in breach of those obligations.

38. On August 19, 2020, through its principal Starley, TBG informed that the gloves were at Krabi International Airport in Thailand. On August 20, 2020, TBG represented they did not have the airway bill yet, but would receive it "tomorrow or Monday".

7

39. Notwithstanding these assurances, no gloves from Sri Tang ever materialized. On August 24, 2020, Plaintiff demanded a full refund. Attached as **Exhibit E** is a copy of the Email Communication Demanding Refund. The same day, Starley and Floe, acting on behalf of TBG, agreed it was best to process a refund.

40. On August 25, 2020, Floe emailed Plaintiff that he had requested a refund. The next day, August 26, 2020, TBG stated "[w]e have requested a return of the wire. It will take several days to process." On September 1, 2020, TBG informed that the reverse wire was delayed because TBG's banker was not in the office, but that the funds would be returned by the end of the first week in September. On September 4, 2020, TBG followed up to confirm that if the wire did not go through that day, then it would transmit the day after the Labor Day holiday on September 8, 2020. On September 9, 2020, TBG informed that the money had been out of TBG's account since the previous week and that Floe was running a trace on the transaction. All of these representations were made by Starley, as TBG's principal, and based on information supplied by Floe.

41. On September 11, 2020, Floe stated he was going to the bank to try to resolve the problem. On September 18, 2020, Starley texted Farmer that he was communicating with Floe about the reverse wire. On September 22, 2020, TBG, through its principal Starley, informed Plaintiff that it was committed to resolving the issue with its bank and would find an alternative way to return the funds if the bank could not execute a reverse wire. On September 26, 2020, TBG, through its principal Starley, informed Plaintiff that it would wire the money directly to the Escrow Account instead of attempting a reverse wire. All of these representations were based on information supplied by Floe.

42. At around this same time, Atlantic, through its attorneys, sent a demand letter for the funds. On September 29, 2020, Starley texted Farmer that Floe "said he will get it paid this week." This representation was based on information supplied by Floe.

43. Despite these multiple assurances, the $971,572.50 was not returned to Atlantic. On August 13, 2020, TBG told Plaintiff that it wanted a release agreement and that, once Atlantic signed the release agreement, TBG would pay immediately. Atlantic's lawyers subsequently drafted and presented a signed release to TBG but, notwithstanding this release – Atlantic never received payment.

44. Upon information and belief, Defendants have engaged in patterned conduct defrauding other customers.

## COUNT I - FRAUD IN THE INDUCEMENT
### (As to TBG and Floe)

45. Plaintiff incorporates by reference paragraphs 1 through 44 into this count.

46. TBG and Floe, through their principal and agent Starley, misrepresented that TBG had already advanced money to the manufacturer of the Gloves in Asia "in order to keep the process moving" and that "TBG has four other manufacturers and has represented that they will obtain satisfactory supply from another one within 12 hours if necessary."

47. Plaintiff relied in these assurances and commitments that TBG had made concrete arrangements with a manufacturer in Asia for purchase of the Gloves, had actually advanced funds in connection with this transaction, and had a number of alternative sources lined up if the order fell through.

48. In reliance on these assurances, Plaintiff authorized the release of the $971,572.50 from the Escrow Account, to TBG.

9

49. The foregoing statements made by TBG's representatives to Atlantic were false and were known by TBG and Floe to be false. In fact, TBG had not advanced money to a manufacturer of nitrile gloves in Asia to secure the Glove Orders, had not lined up four other manufacturers with the capacity to fill the Glove Orders within 12 hours, if necessary and, upon information and belief, had not actually secured any concrete commitment with the initial manufacturer or any other manufacturer in Asia to fill the Glove Orders.

50. The above misrepresentations by TBG and Floe were made with the intent to deceive Atlantic and with the intent that they be acted upon, i.e., to induce Atlantic to authorize release of the $971,572.50 in escrow to TBG.

51. Atlantic in fact relied upon and was deceived by these misrepresentations and, in response thereto, authorized release of the $971,572.50 in funds from the Escrow Account to TBG.

52. Atlantic's reliance upon these misrepresentations was reasonable in the circumstances.

53. As a direct and proximate result of these misrepresentations, Atlantic has been damaged in the sum of the $971,572.50 paid to TBG and is entitled to recover that sum plus pre- and post-judgment interest and the other damages set forth herein.

54. Because TBG and Floe acted willfully, deliberately, and intentionally in causing these fraudulent representations to be made, Atlantic is entitled to recover of them, jointly and severally, punitive damages in an amount to be determined by the collective conscience of the jury.

**COUNT II - FRAUD**
**(As to Defendants TBG and Floe)**

55. Plaintiff incorporates by reference paragraphs 1 through 44 into this count.

56. Defendants TBG and Floe knowingly made the following misrepresentations:

   a. TBG's statements, through its principal and agent Starley, based on information provided by Floe, between June 26, 2020 and July 15, 2020 regarding TBG's capacity to source and supply the Gloves through contacts in Asia;

   b. Floe's July 20, 2020 statement and TBG's July 21, 2020 statement (through its principal and agent Starley, based on information provided by Floe) regarding the ability to provide an SGS report for the Gloves once the purchase funds were received from Atlantic, that the Gloves would be ready within a day of payment, that the entire order could be filled by four other suppliers within 12 hours if the first option fell through, and that TBG had already made an advance payment to the supplier in Asia;

   c. TBG's July 23, 26, and 30, 2020 and August 3 and 8, 2020 statements, through its principal and agent Starley (based on information provided by Floe), and another employee, regarding the imminent delivery of the Glove Orders to Atlantic's logistics provider;

   d. TBG's August 11, 12, 13, 14, and 17, 2020 statements, through its principal and agent Starley, based on information provided by Floe, regarding the status of the delivery of the Gloves by Sri Tang to Los Angeles;

   e. Floe's August 18, 2020 statement and TBG's August 19, 2020 statement (through its principal and agent Starley, based on information provided by

11

    Floe) regarding the consummation of an alternative arrangement to source the Gloves with the Thailand manufacturer SriTang; and

  f. Floe's August 24 and 25, 2020 statement and TBG's August 13 and 26, 2020 and September 1, 4, 9, 11, 18, 22, 26, and 29, 2020 statements regarding the alleged events to "reverse the wire" and return the funds to Atlantic.

57. The above-mentioned false representations by Defendants TBG and Floe were made from Florida with the intent to deceive Atlantic.

58. The above-mentioned false representations by Defendants TBG and Floe were in furtherance of the false representations which induced release of the $971,572.50 in escrowed funds to TBG and to retain the $971,572.50 in escrowed funds despite Gloves Order being unfulfilled.

59. Atlantic in fact relied upon and was deceived by these representations and its reliance on these representations was reasonable in the circumstances.

60. As a direct and proximate result of these misrepresentations, Atlantic has been damaged.

61. Because Defendants TBG and Floe acted willfully, deliberately, and intentionally in causing these fraudulent representations to be made, Atlantic is entitled to recover of them, jointly and severally, punitive damages in an amount to be determined by the collective conscience of the jury.

**COUNT III - CONVERSION**
**(As to Defendants TBG and Floe)**

62. Plaintiff incorporates by reference paragraphs 1 through 44 into this count.

63. Defendant TBG and Floe knowingly obtained the $971,572.50 in escrowed funds which belonged to Atlantic, without the capability or intention of using those funds to acquire the Gloves and, instead, with the intent to permanently deprive Atlantic of its right to or benefit from those funds and to appropriate those funds for TBG's and Floe's own use.

64. On multiple occasions, Atlantic has, in writing or otherwise, demanded that defendants return the $971,572.50 that Defendants TBG and Floe misappropriated from Atlantic.

65. Upon Atlantic demanding the return of its funds, Defendants TBG and Floe had no legal or other right to possess them.

66. Despite these demands, Defendants TBG and Floe have refused of failed to return Atlantic's funds.

67. By reason of this wrongful deprivation of and exercise of dominion and control over Atlantic's property by Defendants TBG and Floe, Atlantic has been damaged in the sum of the $971,572.50 paid to TBG and is entitled to recover that sum plus pre- and post-judgment interest and the other damages set forth here.

68. Because TBG and Floe acted willfully, deliberately and intentionally in depriving Atlantic of these funds, Atlantic is entitled to recover of them, jointly and severally, punitive damages in an amount to be determined by the collective conscience of the jury.

### COUNT IV – FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES
**(As to Defendants TBG and Floe)**

69. Plaintiff incorporates by reference paragraphs 1 through 44 into this count.

70. Plaintiff is a "consumer" as defined in the Florida Deceptive and Unfair Trade Practices Act, § 501.203(7).

71. TBG and Floe do business in Florida and were engaged in "trade or commerce" under the Act.

72. TBG and Floe committed unfair or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, et. seq., by engaging in the conduct described above.

73. Defendant TBG's and Floe's actions are misleading to consumers for the reasons set forth above.

74. Defendant TBG's and Floe's practices are likely to deceive consumers acting reasonably, and have in fact already deceived consumers into believing they represent the largest manufacturers of medical equipment in Asia, causing them to place large orders that will never be fulfilled.

75. Atlantic suffered actual damages proximately caused by Defendant TBG's and Floe's violation of the Act.

76. By reason of this violation, Plaintiff is entitled to recover from Defendants TBG and Floe actual damages, attorney's fees and costs, plus pre- and post-judgment interest.

## COUNT V – UNJUST ENRICHMENT
### (As to Defendants TBG and Floe)

77. Plaintiff incorporates by reference paragraphs 1 through 44 into this count.

78. Plaintiff conferred on Defendants TBG and Floe a substantial benefit, i.e., payment of the sum of $971,572.50 misappropriated by Defendants TBG and Floe for their own use.

79. Defendants TBG and Floe had knowledge of and accepted and retained this benefit without compensating Atlantic or supplying anything in return.

80. Atlantic has a reasonable expectation to be compensated for the benefit conferred upon Defendants TBG and Floe.

81. Under the circumstances it would be inequitable for Defendants TBG and Floe to retain the $971,572.50 received by them since they neither supplied the Gloves nor conferred any other benefit on Atlantic in exchange for receipt of this payment.

82. Defendants TBG and Floe have been unjustly enriched by receipt of the $971,572.50 and Atlantic is entitled to the reimbursement of the $971,572.50, plus pre- and post-judgment interest.

## COUNT VI – NEGLIGENT REPRESENTATION
### (As to Starley)

83. Plaintiff incorporates by reference paragraphs 1 through 44 into this count.

84. Starley, in his capacity as a principal in TBG had a financial interest in the transaction involving the Escrow Agreement and the Glove Orders and owed a duty to Atlantic to exercise reasonable care in obtaining and communicating information regarding the release of funds from the Escrow Account to TBG.

85. Starley made multiple misrepresentations of material facts to Atlantic, which included the following:

    a. represented to Atlantic on July 21, 2020, that TBG had advanced funds to the manufacturer of the nitrile gloves in Asia;

    b. represented to Atlantic on July 21, 2020, that TBG had lined up four other manufacturers who could fill the Glove Orders within 12 hours if necessary;

    c. represented to Atlantic on July 23 and 26, 2020 and on August 8, 12, 13, 14, 15, 17, and 19, 2020, that the Glove Orders would be fulfilled shortly;

    d. represented to Atlantic on August 11, 2020, that TBG had secured a concrete commitment with a manufacturer in Asia to fill the Glove Orders;

  e. represented to Atlantic on August 24 and 26, 2020 and September 1, 4, 9, 11, 18, 22, 26, and 29, 2020, that the refund of the $971,572.50 would occur forthwith.

86. The representations described in the paragraph above were false.

87. Starley made these representations without knowledge of their truth or falsity or, alternatively, should have known the representations were false had he exercised reasonable care.

88. Starley intended through these false misrepresentations to induce Atlantic to release the $971,572.50 to TBG.

89. Atlantic justifiably relied on Starley's negligent misrepresentations.

90. As a direct and proximate result of Starley's negligent misrepresentations, Atlantic has been damaged, in that it was thereby induced to release the $971,572.50 from the Escrow Account to TBG and has subsequently been deprived of that money.

## COUNT VII – CIVIL THEFT
### (As to Defendants TBG and Floe)

91. Plaintiff incorporates by reference paragraphs 1 through 44 into this count.

92. On or about July 22, 2020, through the present day, Defendants TBG and Floe knowingly and wrongfully took, with felonious criminal intent, the $971,572.50 from the Escrow Account.

93. Defendants TBG and Floe took these with the intent to deprive Atlantic of the right to the $971,572.50 amount and to appropriate for his own use and the use of others not entitled to use this amount.

94. The actions taken by Defendants TBG and Floe were done intentionally and maliciously as part of a scheme designed to defraud Atlantic of its monetary assets.

95. On August 25, 2020, Atlantic sent its demand for refund required to initiate a claim for civil theft. See **Exhibit E**.

96. Defendants TBG and Floe have not complied with that demand.

97. Atlantic has been damaged as a result of Defendants TBG and Floe's actions.

98. Atlantic has retained the undersigned counsel to represent them in this action and in so doing incurred an obligation for the payment of attorney's fees and costs.

99. Because TBG and Floe acted willfully, deliberately, and intentionally in causing this civil theft, Atlantic is entitled to recover of them damages, including treble damages and attorney's fees pursuant to § 772.11 Fla. Stat., as well as granting such other relief as the Court deems just, equitable, and proper in an amount to be determined by the collective conscience of the jury.

100. All conditions precedent to bringing this claim (if any) have been waived, excused, performed, or otherwise occurred.

## **PRAYER FOR RELIEF**

For these good and sufficient reasons, Plaintiff prays for the following relief:

a. That Plaintiff have and recover from all Defendants damages in the sum of $971,572.59, together with pre- and post-judgment interest at the legal rate;

b. That Plaintiff have and recover of Defendants TBG and Floe punitive damages with respect to Count I – Fraud in the Inducement and Count II – Fraud, in an amount to be determined by the jury;

    c.    That Plaintiff have and recover of Defendants TBG and Floe punitive damages with respect to Count III – Conversion, in an amount to be determined by the jury;

    d.    That Plaintiff have and recover of Defendants TBG and Floe treble damages and attorney's fees pursuant to § 772.11 Fla. Stat. with respect to Count VII – Civil Theft, in an amount to be determined by the jury;

    e.    That the costs of this action, including Plaintiff's reasonable attorney's fees, be taxed against all Defendants; and

    f.    For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Dated: December 13, 2021

Respectfully Submitted,

RIVERO MESTRE LLP
*Attorneys for Plaintiff*
2525 Ponce de Leon Blvd.
Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505
E-mail: arivero@riveromestre.com
E-mail: amalave@riveromestre.com
E-mail: strujillo@riveromestre.com

By:   /s/ Andrés Rivero
ANDRÉS RIVERO
Florida Bar No. 613819
Ana C. Malavé
Florida Bar No.: 83839
Sylmarie Trujillo
Florida Bar No.: 112768

        MURCHISON, TAYLOR & GIBSON, PLLC
*Attorneys for Plaintiff*
1979 Eastwood Rd., Suite 101
Wilmington, NC 28403
Telephone: 910-763-2426
Facsimile: 910-763-6561
mmurchison@murchisontaylor.com
amcvey@murchisontaylor.com

By: s/ Michael Murchison
Michael Murchison
N.C. State Bar #10621
*Pro Hac Vice Admission Pending*
Andrew K. McVey
NC State Bar # 20217
*Pro Hac Vice Admission Pending*